STATE OF RHODE ISLAND
KENT, SC.

SUPERIOR COURT

JUDITH A. LAWTON,

Plaintiff

v.

C.A. No. KC 05- **0970**

BANK OF AMERICA CORP. and
ROBERT B. GATES, as Co-Executors of
the Estate of Magda Burt,

Defendants

**COMPLAINT**

1. Plaintiff Judith Lawton ("Lawton") is an individual residing in the State of Florida.

2. Defendant Robert Gates ("Gates") is a resident of the State of Rhode Island.

3. Defendant Bank of America Corp. is a Delaware corporation, with a principal place of business in Raleigh, North Carolina.

Factual Allegations

4. On August 30, 1987, Magda L. Burt died testate. Her last will and testament, executed on January 22, 1981, appointed Rhode Island Hospital Trust National Bank ("Hospital Trust") and Gates as co-executors (the "Co-Executors") of her estate (the "Magda Burt Estate").

5. In or about 1997, Hospital Trust was acquired by BankBoston Corp., on or about October 1, 1999, BankBoston Corp. merged with Fleet Financial Group of Massachusetts creating Fleet National Bank and a new parent organization, FleetBoston Financial Corp., and in or about April, 2004, FleetBoston Financial Corp. merged into Bank of America. Consequently, in or about April 2004, Bank of America became and continues to be a co-executor of the Magda Burt Estate.

6. Lawton is one of ten residuary beneficiaries of the Magda Burt Estate.

7. The Magda Burt Estate included 2,256 Class A non-voting shares of Nyman Mfg.

BLISH & CAVANAGH
COUNSELLORS AT LAW
COMMERCE CENTER
30 EXCHANGE TERRACE
PROVIDENCE, RI 02903-1765
(401) 831-8900
FAX (401) 751-7542

Co. stock, a closely-held corporation in the business of manufacturing and selling disposable food containers.

8. The only fair market valuation of the Nyman Mfg. Co. stock ever performed by Hospital Trust was on August 31, 1987, which valuation appraised the stock at $383.04 per share.

9. From 1989 through 1994, Nyman Mfg. Co. operated at a financial loss. In fiscal year 1994, which ended in March of 1994, the company incurred a loss of approximately $4.5 million.

10. However, in 1994, Nyman Mfg. Co. began a financial turn-around, after the company hired a new chief financial officer and treasurer who specialized in restructuring and marketing for sale financially troubled companies.

11. In fiscal year 1995, which ended in March 1995, Nyman Mfg. Co. earned a profit of over $1.6 million. In fiscal year 1996, which ended in March of 1996, Nyman Mfg. Co. earned a $3.5 million profit, exclusive of $2 million dollar deferred bonuses awarded to the company's officers.

12. Also, the shareholder equity of Nyman Mfg. Co. increased substantially in fiscal year 1995, from $131,000 in March of 1994, to over $1.6 million in March of 1995, and shareholder equity continued to increase substantially on a month to month basis as the following fiscal year 1996 progressed.

13. As Nyman Mfg. Co.'s officers and directors recognized that the company was turning around financially and drastically improving, they devised a plan and program to buy out all of the other shareholders of Nyman Mfg. Co., and acquire those shares for themselves.

14. By letter dated August 4, 1995 to the Co-Executors, Nyman Mfg. Co. offered to purchase all 2,256 Class A shares in the Magda Burt Estate, which was then the largest block of Nyman Mfg. Co. shares, for $145.36 per share (the "Stock Purchase Offer"). The price was based upon the discounted book value of the shares as of March 1995. The Stock Purchase Offer was conditioned upon all ten residuary beneficiaries' acceptance of the offer, and that condition was never amended or withdrawn.

15. Upon receipt of the Stock Purchase Offer, the Co-Executors made no attempt to update the aforementioned 1987 valuation of the stock, and made no attempt to evaluate the information included therewith, which in fact was comprised of inaccurate and inadequate information to enable the residuary beneficiaries to make an informed decision. Instead, on or about August 10, 1995, the Co-Executors simply reiterated the information provided in the Stock Purchase Offer to each of the ten residuary beneficiaries, including Lawton.

16. The Co-Executors offered no advice or opinion as to whether the Stock Purchase Offer was reasonable, or whether the residuary beneficiaries had been afforded sufficient accurate information with which to make an informed decision.

17. The Co-Executors failed to ascertain, which could have been accomplished through reasonable inquiry, that material information was not disclosed to them in connection with the Stock Purchase Offer, including but not limited to: (a) that the book value of Nyman Mfg. Co. had increased to approximately $2.88 million by the date of the offer; (b) that the officers of Nyman Mfg. Co. planned to issue stock options to themselves if the company successfully purchased the Class A shares in the Magda Burt Estate; (c) that book value as of March of 1995 was an inadequate basis upon which to determine the fair market value of Nyman Mfg. Co. shares as of

the date of the offer; and (d) that the officers and directors were considering and/or planning to market and sell Nyman Mfg. Co. for a price far higher than book value and far higher than $145.36 per share.

18. All ten residuary beneficiaries of the Magda Burt Estate failed to respond favorably to Nyman Mfg. Co.'s Stock Purchase Offer and, based upon the condition that all ten residuary beneficiary agree to such offer, the shares could not be sold.

19. Even though there existed no impediment to prevent the Co-Executors from distributing the shares to the residuary beneficiaries in equal shares without probate court approval, the Co-Executors then petitioned the Warwick Probate Court for permission to distribute the Nyman Mfg. Co. stock to each of the ten residuary beneficiaries of the Magda Burt Estate in kind, and continued to fail to appraise or ascertain the inadequacy of the Stock Purchase Offer.

20. On October 19, 1995, the Warwick Probate Court held a hearing on the Co-Executors' petition for an in-kind distribution of the Nyman Mfg. Co. stock. During that hearing, the Co-Executors presented no position as to Nyman Mfg. Co's Stock Purchase Offer, even though all ten residuary beneficiaries were not agreeable to the sale, and even though counsel for Nyman Mfg. Co. pressed for the sale of the stock.

21. Consequently, and as a result of the Co-Executors' failure to present a position, the Warwick Probate Court ordered the sale of all the 2,256 shares of the Class A Nyman Mfg. Co. stock in the Magda Burt Estate for $145.36 per share.

22. The Co-Executors did not appeal the Probate Court's Order.

23. On November 6, 1995, the Co-Executors finalized the transaction which allowed Nyman Mfg. Co. to redeem the 2,256 shares in the Magda Burt Estate for $145.36 per share and

distributed the proceeds in equal shares to each of the residuary beneficiaries, including Lawton, all without ever having conducted any reasonable inquiry as to the adequacy of the redemption price, the plans to issue stock options for the shares in the Magda Burt Estate, or the plans and preparations to sell Nyman Mfg. Co.

24. On the same day, that is November 6, 1995, three of Nyman Mfg. Co.'s officers and directors issued to themselves options to purchase the stock from the Magda Burt Estate at $145.36 per share.

25. Thereafter, Nyman Mfg. Co.'s financial condition continued to improve, and Nyman Mfg. Co.'s officers and directors continued to prepare to sell Nyman Mfg. Co.

26. On September 29, 1997, the stock of Nyman Mfg. Co. was sold to Van Leer Corporation for $1,667.38 per Class A share and $2,167.59 per Class B share. Prior to the sale, three of Nyman Mfg. Co.'s officers and directors improperly diluted the value of Nyman Mfg. Co.'s Class A and Class B shares by purchasing treasury shares in June of 1996 for less than their fair market value, and by negotiating overly generous and unfair payments for noncompetition agreements to themselves.

Count I

27. Plaintiff incorporates by reference paragraphs 1 through 26 above as though fully alleged herein.

28. The Co-Executors of the Magda Burt Estate owed and continue to owe fiduciary duties to Lawton and the other residuary beneficiaries of utmost good faith and loyalty.

29. Through their actions and failures to act as aforesaid, the Co-Executors were negligent, unfaithfully administered their duties and breached their fiduciary duties to Lawton, as

well as the other residuary beneficiaries. Among other things, the Co-Executors breached their fiduciary duties:

(a) by failing to perform an adequate valuation of the 2,256 Class A Nyman Mfg. Co. stock as a result of the Stock Purchase Offer;

(b) by failing to investigate and ascertain that Nyman Mfg. Co. had not disclosed material information in connection with its Stock Purchase Offer;

(c) by failing to investigate and ascertain that the officers of Nyman Mfg. Co. planned to issue stock options to themselves for all 2,256 Class A shares in the Magda Burt Estate;

(d) by failing to investigate and ascertain that the book value of the Nyman Mfg. Co. Class A shares as of March, 1995 was an inadequate basis upon which to determine the fair market value of Nyman Mfg. Co. shares;

(e) by failing to investigate and ascertain that book value of Nyman Mfg. Co. shares had increased substantially in the period between March 1995 and November 6, 1995;

(f) by failing to investigate and ascertain that as of November, 6, 1995, the shareholder equity of Nyman Mfg. Co. had risen to over $3 million, representing a book value of $291 per Class A share;

(g) by failing to investigate and ascertain that Nyman Mfg. Co. could be sold for substantially more than book value, and that Nyman Mfg. Co. officers and directors were considering, planning and/or preparing to sell Nyman Mfg. Co. for substantially more than book value;

(h) by petitioning the Warwick Probate Court for an Order to allow an in-kind distribution of the Nyman Mfg. Co. shares in the Magda Burt Estate, and then failing to present a position during the Warwick Probate Court hearing as to the adequacy of Nyman Mfg. Co.'s Stock Purchase Offer;

(i) by failing to object to the presentation made during the Warwick Probate Court hearing by Nyman Mfg. Co.'s attorney; and

(j) by failing to object and/or appeal the Warwick Probate Court's decision to sell all the 2,256 shares of Nyman Mfg. Co. owned by the Magda Burt Estate for $145.36.

30. As a result of the breaches of fiduciary duties by the Co-Executors as aforesaid, Lawton has been damaged.

31. Defendant Bank of America Corp. as a successor- in- interest to Hospital Trust and/or as a co-executor is liable to Lawton for the actions of Hospital Trust as aforesaid.

Count II

32. Plaintiff incorporates by reference paragraphs 1 through 31 above as though fully alleged herein.

33. The Co-Executors, and defendant Bank of America Corp., have failed and refused, and continue to fail and refuse, to take any action to seek relief caused by any wrongful acts and failures to act of the officers and directors of Nyman Mfg. Co. in connection with the Stock Purchase Offer and the redemption of the Magda Burt Estate shares in November 2005.

34. More recently, defendant Bank of America Corp. has failed and refused to resign as a co-executor, even though there is a pending action to remove Bank of America Corp. as a co-executor, even though a majority if not all of the residuary beneficiaries desire such removal, and even though the defense by Bank of America Corp. of the pending action is or may be of substantial cost and expense to the Estate of Magda Burt and its residuary beneficiaries.

35. The foregoing actions and failures to act of defendant Bank of America Corp. have also caused an unnecessary delay in the closing of the Estate of Magda Burt, and thereby have

caused the Magda Burt Estate and its residuary beneficiaries to suffer additional unnecessary expenses.

36. The actions and failures of act of defendant and co-executor Bank of America Corp. as aforesaid constitute breaches of its fiduciary duties owed to Lawton and the other residuary beneficiaries.

37. As a direct result of defendant Bank of America's breaches of fiduciary duty as aforesaid, Lawton has been damaged and continues to incur damages.

WHEREFORE, Lawton demands judgment in her favor and against defendants for compensatory damages, punitive damages, statutory interest, attorneys' fees, costs, and such other and further relief as this Court deems meet and just.

JUDITH A. LAWTON
By her Attorneys,

Karen A. Pelczarski (#3357)
Staci L. Kolb (#5451)
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 751-7542

F:\DOCS\Kap\Burt, Magda\MagdaBurt.complaint.wpd

BLISH & CAVANAGH
COUNSELLORS AT LAW
COMMERCE CENTER
30 EXCHANGE TERRACE
PROVIDENCE, RI 02903-1765
(401) 831-8900
FAX (401) 751-7542